[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
NATURE OF THE PROCEEDINGS
This is an action, brought by the plaintiff, Efstathi Savvoulidis, a/k/a Efstathi Savvoulidis and his wife Karen against the defendant the West American Insurance Company.
1. FACTS:
The credible evidence presented at trial proved the following facts:
1. On July 1, 1994, at approximately 3:48 in the afternoon, the plaintiff, Efstathi Savvoulidis was driving his father-in-law's, Theologos Demetriades' motor vehicle on Bayview Avenue, Norwalk, CT. The plaintiff had permission to drive the vehicle.
2. While operating the aforementioned vehicle, the plaintiff was involved in an automobile accident at the intersection of Bayview Avenue and Golden Hill Avenue.
3. The accident occurred when the vehicle operated by Efstathi Savvoulidis collided with a vehicle operated by Barbara Lawrence.
4. Immediately before the accident, the Lawrence vehicle was stopped at a stop sign at the aforementioned intersection. The plaintiff's vehicle was approaching the intersection at approximately twenty five miles per hour, when the Lawrence vehicle proceeded into the intersection. CT Page 7181
5. The plaintiff did not sound his horn or turn his vehicle to avoid the collision (transcript page 78).
6. The Lawrence vehicle was damaged on the left front fender and the driver's side door. The vehicle driven by the plaintiff sustained front-end damage.
7. As a result of the collision, the plaintiff's arm was injured by the deployment of the airbag.
8. The plaintiff was transported to the Norwalk hospital complaining of dizziness and pain and swelling to his arm, plaintiff did not complain of any head, neck or back pain at during the Emergency Room visit (Transcript page 78). Plaintiff had full range of motion of his neck and back when he was treated at the Emergency Room (Transcript page 78)
9. Plaintiff was released from the hospital the same day as the accident.
10. Plaintiff sought treatment from a Chiropractor (Dr. Fogel), on July 9, 1994. Plaintiff had X-rays and had "electrical" treatments done to his back. Dr. Fogel referred to plaintiff to Dr. Needham. Plaintiff treated with Dr. Fogel from July 1994 to December 1994, a total of sixty four times. Plaintiff did not treat again with Dr. Fogel until approximately four months before trial (Transcript page 80). Dr. Fogel's bills amounted to five thousand two hundred fifty five dollars ($5,255). Dr. Fogel gave the plaintiff a disability rating of fifteen percent (15%) of the cervical spine.
11. Plaintiff sought treatment from Dr. Needham on July 19, 1994, and did not see Dr. Needham again until February of 1995, approximately six months later (Transcript pages 84-86). Dr. Needham's bills totaled five hundred fifty dollars ($550)
12. Plaintiff underwent a MRI examination on November 7, 1994 (Plaintiff's Exhibit 7)
13. The MRI examination indicated that the plaintiff has: 1) Left para-midline extruded disc at C6-7 and 2) Right para-midline C-4/C-5 protrusion. It should be noted that the plaintiff was born with a posterior CT Page 7182 congenital fusion on the dorsal spine of C-4/C-5 (Dr. Needham Deposition Pg. 11)
14. Plaintiff visited his own physician, Dr. Heliotis, on September 17, 1994 and October 17, 1995 complaining of neck pain. Dr. Heliotis total bills were one hundred and forty dollars ($140)
15. Plaintiff also complained that his bridge was damaged and had to be replaced as a result of the accident (Transcript page 20).
16. Plaintiff was born on March 20, 1965 and was twenty-nine years old at the time of the accident in question.
17. Plaintiff worked for his father-in-law at the Howard Johnson's in Darien since 1990.
18. Plaintiff was employed as a cook, but prior to the accident, as part of his employment duties, plaintiff assist with the deliveries and put things away, including, but not limited to lifting fifty pound bag of potatoes (Transcript page 27).
19. Plaintiff's salary was two hundred dollars per week, gross salary, at the time of the accident.
20. Plaintiff was out of work for a year and one half after the accident. However during the year after the accident the plaintiff spent between one and three months on vacation in Greece (Transcript page 57). It should be noted that the plaintiff, Karen Savvoulidis testified that the plaintiff, Efstathi Savvoulidis returned to work "a week, two weeks later", but then immediately changed her testimony upon further questioning by counsel and said he didn't go back to work "until a year later".
21. When plaintiff returned to work, his job duties were changed and he worked as a "host".
22. Prior to the accident, plaintiff worked five days per week, five hours per day, after the accident, plaintiff worked four hours per day (Transcript page 58). CT Page 7183
23. Although plaintiff worked approximately one hour less per day, he was paid the same amount.
24. Plaintiff worked as a host from the time that he returned to work until the time of trial.
25. Plaintiff had a reported income of ten thousand four hundred dollars ($10,400) in 1993.
26. Plaintiff had a reported income of five thousand four hundred dollars ($5,400) in 1994.
27. Plaintiff did not have any reported income in 1995.
28. Plaintiff had a reported income of three thousand three hundred dollars ($3,300) in 1996.
29. Plaintiff had a reported income of nine thousand six hundred twenty seven dollars ($9,627) in 1997, of which six thousand ($6,000) was reported as business income (Transcript page 89). The six thousand dollars was actually given to the plaintiff by his father-in-law.
30. Prior to the accident, plaintiff engaged in recreational soccer games on a twice a week basis, during the soccer season.
31. Plaintiff continued to play soccer after the accident, but only sporadically (Transcript page 34).
32. Prior to the accident, plaintiff played tennis everyday for three to four hours per day.
33. After the accident plaintiff continued to play tennis, but only once a week and with older players.
34. The plaintiff, Karen Savvoulidis testified that her relationship with her husband has changed since the accident. He no longer does simple chores, such as taking the garbage out or play with the children. She even has to take the children to the movies by herself as well as take trips to Pennsylvania. As to the sexual relationship of the plaintiff's, the plaintiff Karen Savvoulidis stated that "[I]t's not the same, but did CT Page 7184 not provide any further information. She did testify however that their quality time together is "not the same as it used to be, where we would go to the movies, go out to dinner with friends. It's very limited." (Transcript Pg. 101-103).
34. Charles W. Needham, M.D. concluded that the plaintiff has reached maximum medical improvement and that he has a 30% permanent partial disability of the cervical spine (10% per ruptured disc, three ruptured discs) (Dr. Needham Deposition, Exhibit 19, at pg. 35). Dr. Needham's further opinion is that the plaintiff has a twenty-five percent (25%) impairment of the entire person (Exhibit 20, Pg. 84). The American Medical Association categorizes the plaintiff's ruptured discs at six percent (6%) of the entire person. The defendant's expert, Herold M. Perlman, M.D. gave the plaintiff a twelve percent (12%) disability rating of the cervical spine.
35. Dr. Needham was unable to determine the plaintiff's loss of range of motion (page 47, Exhibit 19).
36. Dr. Needham recommended surgical treatment, but as of the date of the trial the plaintiff had not undergone surgery.
37. The recommended surgery would cost approximately eighteen thousand dollars ($18,000) and the anesthesia would cost approximately six thousand dollars ($6,000) for a total of twenty four thousand dollars ($24,000)
37. In making his determination as to the plaintiff's condition, Dr. Needham relied very heavily on the plaintiff's "subjective complaints of pain". In his deposition the Doctor stated that [subjective complaints of pain] are very important . . . And most of the time people are honest in their description. Some of them aren't but most of them are." (Exhibit 19, at Pg. 28). (Emphasis added)
38. The plaintiff's expert did not have the benefit of an updated MRI when he came to his medical conclusion that the defendant would need surgery for his ruptured discs. This is despite the fact that there is a CT Page 7185 twenty-percent (20%) chance that the plaintiff's disc could heal without the surgery.
39. Dr. Needham opined that there is a ninety-percent (90%) success rate if the plaintiff were to have the operation
DISCUSSION:
As to the First Count of the Complaint:
As is stated in the Defendant's Trial Brief "the principle issue which confronts the court [in this matter] is what constitutes fair, just and reasonable damages".
After reviewing the evidence and hearing all of the testimony and evaluating the credibility of the witnesses, in particular Efstathi Savvoulidis, it is the conclusion of this Court that the credible testimony and evidence was that the plaintiff, Efstathi Savvoulidis was not partially responsible for the collision that is the subject of this action. Mr. Savvoulidis was credible in his testimony as to how the accident occurred and that although he saw the other car before the impact and that he did not sound his horn or turn to avoid the accident for reason that there simply was not enough time for him to react in such a manner.
Immediately after the accident the plaintiff did not complain of any neck or back injuries, nor did he do so at the Emergency Room when he was being treated. Furthermore the plaintiff had full range of motion of both his back and his neck. The plaintiff did not seek medical treatment again until July 9, 1994, more than one week after the accident had occurred. When he did seek treatment he was treated by a Chiropractor a total of sixty-four times over a six-month period, but then did not treat with him again until four months before trial. The plaintiff's actions and inaction impacted upon the credibility of the witness as to the extent of his injuries and the amount of his subjective pain.
While the plaintiff was testifying, the Court had the opportunity to observe the witness, as he approached the stand, took the stand and sat and testified. The Court CT Page 7186 also had the opportunity to observe the witness's demeanor. it is the conclusion of the Court that while the plaintiff is credible that he did sustain some physical injuries as a result of the car accident that occurred on June 1, 1994, his testimony was not credible as to the extent of said injuries nor as to whether the injuries were permanent in nature. As to the remaining witnesses, it was and is noted that all of the witnesses that testified about their personal observations of the plaintiff as they relate to the plaintiff's injuries were the family members and friends of the plaintiff. While the Court does not believe that any of these people falsely testified, the Court does note that the plaintiffs' family is a very close knit with various ties, including, but not limited to especially strong emotional and financial ties. In light of the foregoing, the Court gave what weight it felt was proper to their testimony.
In light of the plaintiff's relationship with his employer, i.e. his father-in-law it is difficult to ascertain what was the plaintiff's income as the result of his work versus what was a "gift" from his father-in-law. However, a review of the plaintiff's tax filings indicates that he had a substantial loss of income during 1994, 1995 and 1996. The Court finds that the more credible evidence, including, but not limited to the testimony of Mr. and Mrs. Savvoulidis and Mr. Demetriades, was that the plaintiff's loss of income was due to the accident of July 1, 1994.
The more credible evidence and testimony in this case indicate that the plaintiff did not meet its burden of proof by a preponderance of the evidence that his injuries were permanent in nature. As stated by the plaintiff's expert, "[subjective complaints of pain] are very important . . . And most of the time people are honest in their description. Some of them aren't but most of them are." (Exhibit 19, at Pg. 28). Putting it simply the Court finds the testimony concerning the subjective complaints of pain to be exaggerated and therefore lacking some credibility.
The plaintiff's expert opined that there was a twenty percent (20%) CT Page 7187
chance that the plaintiff's discs would heal. In light of the fact that he did not have the benefit of reviewing a more recent MRI to make a determination of any healing when forming his expert opinion as to the permanency of the plaintiff's injuries, the Court gives weighs his testimony at the deposition accordingly.
Taking all of the foregoing into account, the Court finds that the plaintiff, Efstathi Savvoulidis is entitled to damages as follows:
Economic Damages:
 Medical Expenses $ 8,267.45 Lost Income $22,100.00
$30,367.45
 Non-Economic Damages $15,950.00 Total $46,317.45
As to the plaintiff, Karen Savvoulidis' loss of consortium claim. Our Courts define the loss of spousal consortium as:
. . . "[A]s encompassing the services of the [injured spouse], the financial support of the [injured spouse], and the variety of intangible relations which exist between spouses living together in marriage. Prosser, Torts (4th Ed. 1971) § 124, pp. 881-82. These intangible elements are generally described in terms of affection, society, companionship and sexual relations. Comment, The Action for Loss of Consortium in New Mexico," 2 N.Mex.L.Rev. 107. 108 (1972). These intangibles have also been defined as the constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage. Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631 (1912); Lippman, "The Breakdown of Consortium," 30 Colum.L.Rev. 651 (1930); Pound, "Individual Interests in the Domestic Relations," 14 Mich.L.Rev. 177 (1916); Holbrook, "The Change in the Meaning of Consortium," 22 Mich.L.Rev. 1 (1923)." (Internal quotation marks omitted.) Id. We recently reaffirmed the cause of action in precisely these terms. Mendillo v. Board of CT Page 7188 Education, 246 Conn. 456, 477, 717 A.2d 1177 (1998)
Jacoby v. Brinckerhoff, 250 Conn. 86, 90 (1999).
In the instant action, the plaintiffs, by a preponderance of the evidence met there burden of proof of showing that the "intangible relations" that existed between them had changed as a result of the car accident that occurred on July 1, 1994. The plaintiff, Karen Savvoulidis was did not offer any further evidence of a change in the plaintiffs' sexual relationship other than it was not the same. However, Ms. Savvoulidis was very credible as to the other ways that the husband and wife relationship had changed. While the Court found her testimony to be credible as to the change in the relationship, the Court also found that she was not credible as to the depth and length of the loss of Consortium and therefore weighed her testimony accordingly. The Court comes to the conclusion that the plaintiff Karin Savvoulidis has proven by a preponderance of the evidence that she is entitled to the following:
Loss of Consortium $ 7,500.00
CONCLUSION:
The plaintiffs have by a preponderance of the evidence met their burden of proof that they are entitled to damages. After hearing the evaluating the testimony and other evidence presented at trial, the Court has come to the conclusion that the credible evidence indicates that the plaintiffs are entitled to damages as follows:
Efstathi Savvoulidis $46,317.45
 Karen Savvoulidis $ 7,500.00
Although the plaintiffs were able to prove to the Court by a preponderance of the evidence that Efstathi Savvoulidis was injured in the automobile accident on July 1, 1994, and as a result of said injuries suffered economic and non-economic damages, after evaluating the credibility of the witnesses and the evidence presented at trial, the plaintiff, Efstathi Savvoulidis did not prove by a preponderance of the evidence that his injuries were permanent in nature. The plaintiff is therefore not entitled to the future damages claimed.
Richard A. Robinson, J.